[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 275.]

PUSEY, EXR., APPELLANT, *v.* BATOR ET AL.; GREIF BROTHERS CORPORATION, APPELLEE.

[Cite as *Pusey v. Bator*, 2002-Ohio-795.]

*Torts—Wrongful death—Employer hires independent contractor to provide armed security guards to protect property—Inherently dangerous work exception—If someone is injured by weapon as a result of a guard's negligence, employer is vicariously liable even though guard responsible is an employee of the independent contractor.*

(No. 00-1787—Submitted October 30, 2001—Decided February 27, 2002.)

APPEAL from the Court of Appeals for Mahoning County, No. 98 C.A. 55.

_____

SYLLABUS OF THE COURT

When an employer hires an independent contractor to provide armed security guards to protect property, the inherently-dangerous-work exception is triggered such that if someone is injured by the weapon as a result of a guard's negligence, the employer is vicariously liable even though the guard responsible is an employee of the independent contractor.

_____

DOUGLAS, J.

{¶ 1} At all times relevant herein, defendant-appellee, Greif Brothers Corporation, a steel drum manufacturer, owned and operated a manufacturing plant in Youngstown, Ohio. In 1987, Greif Brothers experienced several incidents wherein trespassers stole property from its parking lot. As a result of these incidents, Lowell Wilson, the superintendent at Greif Brothers' Youngstown plant, decided to hire a security company to guard Greif Brothers' property.

**{¶ 2}** In April 1987, Wilson, on behalf of Greif Brothers, entered into a contract with Youngstown Security Patrol, Inc. ("YSP") to supply a uniformed security guard to "deter theft [and] vandalism" on Greif Brothers' property during specified hours. Wilson told YSP's owner and president, Carl Testa, that he wanted the security guard to periodically check the parking lot and the inside of the building. Other than those instructions, Wilson did not instruct Testa in the manner that YSP was to protect Greif Brothers' property.

**{¶ 3}** The written security contract did not specify whether the guard was to be armed or unarmed, and Wilson and Testa both later testified that they never discussed the subject. At least some of the YSP security guards that were assigned to watch Greif Brothers' property carried firearms. Wilson was aware of this because he noticed that the guards wore holsters and guns as part of their uniform. In addition, Wilson was aware of an incident in which a YSP guard discharged his weapon in the manufacturing plant while apparently using one of Greif Brothers' steel drums for target practice. Although Wilson complained to Testa about the damage, he did not indicate that the security guards should not carry firearms while protecting Greif Brothers' property.

**{¶ 4}** On June 30, 1991, Testa hired Eric Bator as a YSP security guard. Notes written on the bottom of Bator's application indicate that Bator was hired as an unarmed guard but that he would take the necessary training required by the state to become certified as an armed guard. Nevertheless, because he felt uneasy performing his security duties without a weapon, Bator took his gun, in a briefcase, to work with him. Bator testified that his supervisor, Bill Kissinger, knew that Bator carried a gun while working as a YSP guard and that Bator was not licensed to work as an armed guard. Kissinger testified that he had seen Bator's gun but denied knowing that Bator carried the gun while working as a YSP guard.

**{¶ 5}** YSP employed several security guards but only one guard per shift was assigned to guard Greif Brothers' property. Bator was the guard assigned to

Greif Brothers' property from 11:00 p.m., August 11 to 7:00 a.m., August 12, 1991. At approximately 1:00 a.m., Bator looked out through a window in the guard office and saw two individuals, later identified as Derrell Pusey and Charles Thomas, walking through Greif Brothers' parking lot. Bator used the radio in the office to inform a YSP guard on duty at another location that two people were on Greif Brothers' property.

{¶ 6} Bator, without his gun, walked out of the building but remained on the porch outside the office door. When Bator stepped out from the doorway, the men stopped walking and looked toward him. Both men had their hands behind their backs. Bator estimated that he was twenty feet from the men. Bator twice asked the men if he could help them; neither man responded but instead looked at the other and then back at Bator.

{¶ 7} Bator testified that Charles then moved his hands from behind his back and Bator saw that he was holding a bag. When the bag was in motion, it sounded to Bator like metal was hitting together inside of it.[1] Bator again asked the men what they wanted. Bator testified that Derrell then asked, "Are you open for business?" Bator replied that the business was not open and that he was the night security guard. According to Bator, Derrell then became angry and called Bator a "mother fucker." Derrell's outburst frightened Bator and he quickly stepped inside the guard office, retrieved his gun, and returned outside.

{¶ 8} Bator testified that he held the gun below his waist pointed toward the ground and again asked the men to tell him what they wanted. Derrell swore at Bator again, which further frightened him, and Bator raised the gun to be sure the men could see it and ordered them to lie down on the ground with their arms out to their sides. Bator testified that Charles complied but Derrell, although he did get

---

1. It was later discovered that the bag contained a pair of pliers, a screwdriver, and wire cutters. Testimony revealed that a few hours before their confrontation with Bator, the men had been using these tools while performing work for a woman that lived near Greif Brothers' property.

down on the ground, did not put his arms out to the sides but instead propped himself up on his forearms. Bator told the men that he felt safer with them on the ground and Derrell replied, "Fuck you," or "Fuck it" and made a quick movement like he was reaching for something in his back pocket. Bator thought Derrell was reaching for a weapon, so he fired his gun.[2] The bullet struck Derrell in the back of his head.

{¶ 9} Charles asked Bator why he had shot Derrell and Bator told him that Derrell had made a sudden movement. Charles said he had to go tell Derrell's mother that her son had been shot. Bator ordered Charles to stay where he was and went back into the office and radioed for a YSP guard at another location to call for an ambulance and the police.

{¶ 10} While Bator was using the radio his back was toward Charles, who got up from the ground and left the scene. Kissinger, who had been patrolling near Greif Brothers' property when he heard Bator's first radio transmission regarding the two men, responded to the call and was turning his vehicle into Greif Brothers' parking lot when he saw Charles. Kissinger prevented Charles from leaving.

{¶ 11} When the police arrived, Charles told an officer that he and Derrell had come onto Greif Brothers' property looking for a jack to help a female motorist with a flat tire. A police officer immediately went to the area where Charles indicated that he and Derrell had seen the stranded motorist but the officer did not find a car with a flat tire there.

{¶ 12} Derrell was transported to the hospital, where he died from his wound. Thereafter, plaintiff-appellant, Ethel Pusey, Derrell's mother, individually and as executor of Derrell's estate, filed a wrongful death and survivorship action against Bator, YSP, and Greif Brothers. YSP and Bator settled with Pusey soon after the jury trial began, leaving Greif Brothers as the only defendant.

---

2. When police later recovered Derrell's clothing from the hospital they discovered a small paring knife among his personal effects.

**{¶ 13}** After Pusey rested her case, Greif Brothers moved for a directed verdict pursuant to Civ.R. 50(A). The trial court granted Greif Brothers' motion. The court held that even if Derrell's death was the result of YSP's negligence, Greif Brothers was not liable because YSP was an independent contractor and, as a general rule, an employer is not liable for the negligent acts of its independent contractor. The court rejected Pusey's assertion that the nature of the work contracted for in this case qualified as an exception to the general rule.

**{¶ 14}** Pusey appealed the trial court's decision to the Seventh District Court of Appeals. The court of appeals, in a split decision, affirmed the trial court's ruling and Pusey appealed to this court. The case is before this court upon our allowance of a discretionary appeal.

**{¶ 15}** The issue for our determination in this case is whether the court of appeals erred in affirming the trial court's ruling directing a verdict in favor of Greif Brothers. A decision granting a directed verdict should be affirmed on appeal if, when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds could only find against the nonmoving party. See Civ.R. 50(A)(4); *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 23, 734 N.E.2d 782, 785.

**{¶ 16}** In making its determination that Greif Brothers was not liable for the damages resulting from Derrell's death, the trial court first determined that YSP was an independent contractor and not an employee of Greif Brothers. This was an important factor in the court's ultimate decision because, whereas an employer is liable for the negligent acts of its employees committed within the scope of employment, an employer of an independent contractor generally is not liable for the negligent acts of the independent contractor. *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438, 628 N.E.2d 46, 48; *Strayer v. Lindeman* (1981), 68 Ohio St.2d 32, 34, 22 O.O.3d 159, 161, 427 N.E.2d 781, 783; 2 Restatement of the Law 2d, Torts (1965) 370, Section 409. Because this finding was a pivotal factor in the trial court's decision, we review it first.

**{¶ 17}** "The chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work." *Bobik v. Indus. Comm.* (1946), 146 Ohio St. 187, 32 O.O. 167, 64 N.E.2d 829, paragraph one of the syllabus. If such right is in the employer, the relationship is that of employer and employee; but if the manner or means of performing the work is left to one responsible to the employer for the result alone, an independent contractor relationship is created. *Id.* at paragraph two of the syllabus.

**{¶ 18}** We find that, even when viewed in the light most favorable to Pusey, the evidence clearly established YSP's status as an independent contractor. Greif Brothers specified the result to be accomplished, *i.e.*, to deter vandals and thieves, but the details of how this task should be accomplished, with the exception noted above regarding periodic patrolling of the property, were left to YSP. Moreover, YSP, not Greif Brothers, hired the guards, supplied them with uniforms and equipment, paid them, and assigned them to their posts, and was responsible for training them and ensuring that they were state-certified as security guards. For the foregoing reasons, we agree with the trial court's conclusion, affirmed by the court of appeals, that YSP was an independent contractor.

**{¶ 19}** As stated previously, an employer is generally not liable for the negligent acts of an independent contractor. There are, however, exceptions to this general rule, several of which stem from the nondelegable duty doctrine. Nondelegable duties arise in various situations that generally fall into two categories: (1) affirmative duties that are imposed on the employer by statute, contract, franchise, charter, or common law and (2) duties imposed on the employer that arise out of the work itself because its performance creates dangers to others, *i.e.*, inherently dangerous work. Prosser & Keeton, The Law of Torts (5 Ed.1984) 511-512, Section 71; *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 260-261, 553 N.E.2d 1038, 1047-1048. If the work to be performed fits into one of these

two categories, the employer may delegate the *work* to an independent contractor, but he cannot delegate the *duty*. In other words, the employer is not insulated from liability if the independent contractor's negligence results in a breach of the duty.

**{¶ 20}** Pusey claims that hiring armed guards to protect property creates a nondelegable duty because the work is inherently dangerous. Consequently, Pusey argues, even if YSP is an independent contractor, that status does not relieve Greif Brothers from liability for the damages arising from Derrell's death resulting from the alleged negligence of Bator.

**{¶ 21}** Work is inherently dangerous when it creates a peculiar risk of harm to others unless special precautions are taken. See *Covington & Cincinnati Bridge Co. v. Steinbrock & Patrick* (1899), 61 Ohio St. 215, 55 N.E. 618, paragraph one of the syllabus; 2 Restatement of the Law 2d, Torts, Section 427; Prosser & Keeton at 512-513, Section 71. Under those circumstances, the employer hiring the independent contractor has a duty to see that the work is done with reasonable care and cannot, by hiring an independent contractor, insulate himself or herself from liability for injuries resulting to others from the negligence of the independent contractor or its employees. *Covington* at paragraph one of the syllabus.

**{¶ 22}** To fall within the inherently-dangerous-work exception, it is not necessary that the work be such that it cannot be done without a risk of harm to others, or even that it be such that it involves a high risk of such harm. It is sufficient that the work involves a risk, recognizable in advance, of physical harm to others, which is inherent in the work itself. 2 Restatement of the Law 2d, Torts, at 416, Section 427, Comment *b*.

**{¶ 23}** The exception does not apply, however, where the employer would reasonably have only a general anticipation of the possibility that the contractor may be negligent in some way and thereby cause harm to a third party. For example, one who hires a trucker to transport his goods should realize that if the truck is driven at an excessive speed, or with defective brakes, some harm to

persons on the highway is likely to occur. An employer of an independent contractor may assume that a careful contractor will take routine precautions against all of the ordinary and customary dangers that may arise in the course of the contemplated work. *Id.* at 385, Section 413, Comment *b*; Prosser & Keeton at 514-515, Section 71.

{¶ 24} The inherently-dangerous-work exception does apply, however, when special risks are associated with the work such that a reasonable man would recognize the necessity of taking special precautions. The work must create a risk that is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity arising out of the particular situation created, and calling for special precautions. 2 Restatement of the Law 2d, Torts, at 385, Section 413, Comment *b*; Prosser & Keeton at 513-514, Section 71.

{¶ 25} Greif Brothers argues that hiring armed guards to protect property does not create a peculiar risk of harm to others and, therefore, does not fit within the inherently-dangerous-work exception. The common pleas court agreed with Greif Brothers and relied on the Twelfth District Court of Appeals' holding in *Joseph v. Consol. Rail Corp.* (Oct. 30, 1987), Butler App. No. CA87-05-065, unreported, 1987 WL 19481, to support its decision.

{¶ 26} In *Joseph*, the defendant, Conrail, hired an independent contractor to perform surveillance of an employee of Conrail to determine the validity of the employee's claim that he had injured his back. The investigators were consequently detected and confronted by the employee. In a subsequent action by the employee against Conrail for alleged damages resulting from the confrontation, the trial court granted summary judgment in favor of Conrail.

{¶ 27} On appeal, the Butler County Court of Appeals rejected the plaintiff's contention that the inherently-dangerous-work exception was applicable. The court stated that that exception " 'is limited to dangerous work, and cannot be

extended to proper work dangerously done.' " *Id.*, quoting *Newcomb v. Dredge* (1957), 105 Ohio App. 417, 422, 6 O.O.2d 178, 181, 152 N.E.2d 801, 806.

{¶ 28} Although we agree with the holding in *Joseph*, we disagree with the trial court's determination that it is applicable to the facts of this case. One crucial difference between the work at issue in *Joseph*, *i.e.*, surveillance, and the work at issue herein, *i.e.*, an armed guard deterring thieves and vandals, is that an *armed* confrontation with a suspicious person may be *required* by the latter. Surveillance work, as emphasized by the *Joseph* court, is not inherently dangerous to the person being investigated because the purpose of the investigator is to remain undetected and unobtrusive. In contrast, *armed* YSP guards were instructed to "deter" thieves and vandals. Thus, the work contracted for contemplates a confrontation between an armed guard and persons entering the property. For the foregoing reasons, we do not agree with the trial court's determination that *Joseph* supports its conclusion that hiring armed guards to protect property is not inherently dangerous to those entering the property.

{¶ 29} In affirming the trial court's decision, the court of appeals did not consider whether armed security satisfied the inherently-dangerous-work exception. The court of appeals considered only the affirmative-duty branch of the nondelegable duty doctrine and held that the work did not involve a nondelegable duty because Greif Brothers did not have an affirmative duty to protect Derrell, a trespasser. But the court of appeals failed to recognize that a duty arises from the work itself if it creates a peculiar risk of harm to others. *Covington*, 61 Ohio St. at 224, 55 N.E. at 619.

{¶ 30} We find that work such as YSP was hired to perform does create a peculiar risk of harm to others. When armed guards are hired to deter vandals and thieves it is foreseeable that someone might be injured by the inappropriate use of the weapon if proper precautions are not taken. Thus, such an injury is one that might have been anticipated as a direct or probable consequence of the performance

of the work contracted for, if reasonable care is not taken in its performance. Also, the risk created is not a normal, routine matter of customary human activity, such as driving an automobile, but is instead a special danger arising out of the particular situation created and calling for special precautions. We therefore hold that when an employer hires an independent contractor to provide armed security guards to protect property, the inherently-dangerous-work exception is triggered such that if someone is injured by the weapon as a result of a guard's negligence, the employer is vicariously liable even though the guard responsible is an employee of the independent contractor.

{¶ 31} We do not mean to suggest by the foregoing that we have determined that Derrell's death resulted from YSP's negligence. That issue is to be determined by a finder of fact. If the fact finder so finds, however, then, pursuant to our holding herein, Greif Brothers is liable for the damages even though the negligence was that of an employee of an independent contractor.

{¶ 32} For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause to the trial court for a fact-finder's determination whether Derrell's death was a result of YSP's negligence.

*Judgment reversed*

*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur in judgment only.

_____

**COOK, J., concurring in judgment only.**

{¶ 33} A majority of this court holds that the provision of "armed security guards to protect property" triggers, as a matter of law, the "inherently-dangerous-work exception" to the general rule that an employer is not vicariously liable for

the negligence of its independent contractor.[3]  Accordingly, the majority decides that Greif Brothers may be vicariously liable if the jury finds that Eric Bator acted negligently in shooting Derrell Pusey.  Although I agree with the majority's decision to reverse the judgment and remand the cause, I would decline to hold that the work contracted by Greif Brothers to Youngstown Security Patrol ("YSP") was "inherently dangerous" to others as a matter of Ohio law.  Further, I disagree with the majority's suggestion that Greif Brothers should be held liable for any negligence of YSP beyond the failure to take reasonable precautions against a recognized danger.

{¶ 34} Like the majority, I agree that certain provisions of the Restatement of Torts should inform our interpretation of the scope of Ohio's inherently-dangerous-work exception.  See, generally, 2 Restatement of the Law 2d, Torts (1965), Chapter 15, Sections 409-429 ("Restatement").  Of particular significance is Section 427, which provides:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

{¶ 35} The Restatement emphasizes that an independent contractor's work need not be " 'intrinsically' or 'inherently' dangerous" in order to pose a "special danger" to others within the meaning of Section 427.  *Id.* at 416, Comment *b*.  "It is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be

---

3.  At least three courts have held that the provision of armed security personnel is *not*, in and of itself, an inherently dangerous activity.  See *Ross v. Texas One Partnership* (Tex.App.1990), 796 S.W.2d 206, 214-215; *Brien v. 18925 Collins Avenue Corp.* (Fla.App.1970), 233 So.2d 847, 38 A.L.R.3d 1328; *Schreiber v. Camm* (D.N.J.1994), 848 F.Supp. 1170, 1177-1180.

expected in the ordinary course of the usual or prescribed way of doing it, or that the employer has special reason to contemplate such a risk under the particular circumstances under which the work is to be done." *Id.*; see, also, 2 Restatement at 385-386, Section 413, Comment *b* (similarly defining the type of work that poses a "peculiar risk" of harm to others). Endorsing Comment *b* to Section 427, as well as Comment *b* to Section 413, the majority incorporates aspects of the Restatement's "peculiar risk"/"special danger" doctrine into Ohio's inherently-dangerous-work exception.[4] Relying on these concepts, the majority ultimately concludes that the provision of armed security falls within the inherently-dangerous-work exception as a matter of law.

{¶ 36} Unlike the majority, I would decline to hold that the work contracted by Greif Brothers to YSP—premises security to deter thieves and vandals—was "inherently dangerous" to others as a matter of Ohio law. As this court has recognized, the issue of whether an employer may be liable for the negligence of an independent contractor is not always determinable as a matter of law. Rather, the question "may be one of law, or of fact, or of mixed law and fact, depending upon the circumstances of the particular case." *Warden v. Pennsylvania RR. Co.* (1931), 123 Ohio St. 304, 307-308, 175 N.E. 207, 208. As the *Warden* court explained:

"The circumstances surrounding the execution of a contract by an independent contractor might be such that it could properly be stated that, as a matter of law, there would be no liability on the part of the owner. On the other hand, the circumstances might be such as to make it very clear that the owner would carry a legal responsibility for the negligence of the contractor, to be determined by the court without submission to the jury. Between these two extremes, the

---

4. Many courts view the terms "peculiar risk" and "special danger" as being equivalent. See, *e.g., Huddleston v. Union Rural Elec. Assn.* (Colo.1992), 841 P.2d 282, 290, fn. 9; *Saiz v. Belen School Dist.* (1992), 113 N.M. 387, 394, 827 P.2d 102, 109, fn. 6.

circumstances may be so complicated that minds might easily differ as to the danger attendant upon the execution of the work, resulting in different conclusions as to the duty of the owner to exercise care to avoid injury to third persons." *Id.*, 123 Ohio St. at 308, 175 N.E. at 208.

**{¶ 37}** If an independent contractor's work is "generically hazardous," such that the activity poses an inherent danger to others regardless of the skill with which the contractor performs the work, it is understandable how a court may find that the work falls within the inherently-dangerous-work exception as a matter of law. See *Wilson v. Good Humor Corp.* (C.A.D.C.1985), 757 F.2d 1293, 1303-1304. But as the majority expressly recognizes today, the exception extends beyond such "generically hazardous" activities. Under the Restatement's "peculiar risk"/ "special danger" doctrine, an activity may be fairly characterized as "inherently dangerous" even if it *can* be performed safely by taking proper precautions. See *Huddleston v. Union Rural Elec. Assn.* (Colo.1992), 841 P.2d 282, 290; see, also, *Scott Fetzer Co. v. Read* (Tex.App.1997), 945 S.W.2d 854, 861-862. Specifically, the exception applies "when an employer has reason to know that his independent contractor is likely, *under particular circumstances*, to endanger others absent reasonable precautions." (Emphasis *sic*.) *Wilson*, 757 F.2d at 1303. Thus, when the activity at issue is not "generically hazardous," the applicability of the exception "depends not only on the generic nature of an independent contractor's work but also on the fact-specific, particular circumstances under which any task is to be performed." *Id.* at 1304.

**{¶ 38}** I do not view the work YSP contracted to perform—providing security guards to protect Greif Brothers property—as falling within the "generically hazardous" branch of the inherently-dangerous-work exception.[5]

---

5. In finding the inherently-dangerous-work exception applicable as a matter of law, the majority emphasizes that Greif Brothers hired YSP to provide *armed* guards. As the majority itself acknowledges, however, the contract between Greif Brothers and YSP did *not* specify whether guards were to be armed or unarmed. Indeed, one YSP employee testified that he performed services

Whether the presence of security guards poses a peculiar risk to others depends on the particular circumstances of the job, such as the location of the guarded premises and the likelihood of the guards being armed. See 2 Restatement at 385, Section 413, Comment *b* (noting that a "peculiar risk" may arise out of the "character" of the work "or out of the place where it is to be done"). But even though the provision of security is not generically hazardous, there remains a genuine issue as to whether the "special danger"/"peculiar risk" branch of the inherently-dangerous-work exception applies here.

**{¶ 39}** Greif Brothers hired YSP only after it had experienced numerous thefts of property from the premises. Further, Eric Bator testified that the Greif Brothers' property was "scary" at night, making him uneasy to be on duty without a weapon when there had been "a lot of homicides in the city." It was therefore conceivable for a reasonable jury to conclude that Greif Brothers should have recognized a risk that a security guard would likely confront individuals on its property who would be suspected—rightfully or not—of nefarious activity. The jury could also conclude that the contemplated risk was heightened by the possibility that YSP's guards would be armed—a circumstance that Greif Brothers knew about during the course of YSP's performance of the contract. In turn, the jury could find that these risks necessitated certain precautions by YSP, such as reasonable supervision of inexperienced guards or training related to the rules of engagement with suspected wrongdoers. Of course, the jury could also find that the security work did not pose peculiar risks or that YSP did, in fact, take reasonable precautions against risks associated with guarding Greif Brothers property. Either way, we should allow the trier of fact to decide whether the facts and circumstances

---

at Greif Brothers both armed and unarmed. This is not to say that YSP's provision of armed guards is irrelevant to the fact finder's determination of whether the security work was inherently dangerous. Whether the guards were armed is simply one of the particular facts and circumstances that the jury may consider in ultimately determining the applicability of the inherently-dangerous-work exception.

surrounding this case bring YSP's work within the purview of the "peculiar risk"/"special danger" branch of the inherently-dangerous-work exception.

{¶ 40} Because I disagree with the majority's characterization of security work as inherently dangerous as a matter of law (*i.e.*, in the "generically hazardous" sense of the term), I also disagree with the majority's determination that Greif Brothers may be held vicariously liable for *any* negligence of Bator (or YSP) that caused Pusey's death. Admittedly, this court's precedent supports the imposition on the employer of vicarious liability for the independent contractor's negligent performance of work that falls within the inherently-dangerous-work exception. See, *e.g.*, *Richman Bros. Co. v. Miller* (1936), 131 Ohio St. 424, 6 O.O. 119, 3 N.E.2d 360, paragraph one of the syllabus; *Covington & Cincinnati Bridge Co. v. Steinbrock* (1899), 61 Ohio St. 215, 55 N.E. 618, paragraph one of the syllabus. And indeed, I offer no disagreement with this rule when the work involved is inherently dangerous in the "generically hazardous" sense. But insofar as this court has chosen to weave the "peculiar risk"/"special danger" doctrine of the Restatement into the fabric of Ohio's inherently-dangerous-work exception, I would more closely track the Restatement's explanation of when the employer will be liable for physical harm caused by the independent contractor's work.

{¶ 41} When an employer engages an independent contractor to perform work that involves a peculiar risk or special danger to others due to the circumstances under which it is to be performed, the Restatement does not subject the employer to liability for *any and all* negligence of the contractor. The Restatement makes clear that the employer is not liable for any negligence of the independent contractor that is "collateral" to the contemplated risk. 2 Restatement at 413-414, Section 426 and Comment *a*; see, also, 2 Restatement at 417, Section 427, Comment *d* (noting that the rule stated in Section 427 "should be read together" with Section 426). Thus, an employer will not be liable for physical harm caused by "abnormal or unusual kinds of negligence on the part of the contractor,

or negligence in the performance of operative details of the work which ordinarily may be expected to be carried out with proper care." 2 Restatement at 414, Section 426, Comment *b*. The question of whether a contractor's negligence was "collateral," like the related issue of whether there was a peculiar risk inherent in the work being performed, is generally an issue for the trier of fact to resolve. *Caudel v. E. Bay Mun. Util. Dist.* (1985), 165 Cal.App.3d 1, 9, 211 Cal.Rptr. 222, 227.

{¶ 42} Furthermore, the Restatement expressly limits employer liability under the "peculiar risk" and "special danger" doctrine to physical harm caused by the contractor's failure to take *reasonable precautions* against a danger contemplated by the employer. See 2 Restatement at 417, Section 427, Comment *d*. In other words, the liability of the employer depends not on the failure of the contractor to exercise reasonable care in performing the work but, rather, on the failure of the contractor to take a reasonable precaution against a special danger or peculiar risk that the employer should have recognized. See *Saiz v. Belen School Dist.* (1992), 113 N.M. 387, 395, 827 P.2d 102, 110. I would therefore hold that Greif Brothers may be held liable under the inherently-dangerous-work exception only if the trier of fact finds that YSP failed to take reasonable precautions against a special danger or peculiar risk that Greif Brothers should have recognized as inherent in the security work. If, on the other hand, the trier of fact finds that YSP did, in fact, take reasonable precautions against a special danger or peculiar risk, then liability should not attach.

{¶ 43} With these reservations, I concur in the judgment.

M<small>OYER</small>, C.J., and L<small>UNDBERG</small> S<small>TRATTON</small>, J., concur in the foregoing opinion.

_____

*Percy Squire* and *Lloyd Pierre-Louis*, for appellant.

*Comstock, Springer & Wilson Co., L.P.A.*, and *William Scott Fowler*, for appellee.

—————————————