OPINION
{¶ 1} Defendant/third-party plaintiff-appellant Robert Bernard appeals the decision of the Mahoning County Common Pleas Court which directed a verdict in favor of third-party defendant-appellee Zid Realty Associates. The main issue presented to this court on appeal is whether appellant's claims against his realtor should have been allowed to proceed to the jury. For the following reasons, the directed verdict is reversed and the case is remanded for trial between appellant and appellee Zid.
 STATEMENT OF FACTS {¶ 2} In 1999, appellant purchased a home on Palmyra Road in Canfield. In May 2001, appellant had the septic system inspected by the Mahoning County Board of Health as required when selling a house. The county inspector issued a report on September 13, 2001, which found that the system was undersized by today's standards and does not meet present code. Thus, it was not considered satisfactory for the property. However, repair or replacement was not ordered at the time because the system was not malfunctioning or a nuisance.
 {¶ 3} On September 24, 2001, appellant signed a Residential Property Disclosure Form. Related to the septic system, appellant did not fill in the date of the last inspection and did not list any "current leaks, backups or other material problems." On another question, he replied that he has not received notice of any building or housing code violations currently affecting the use of the property.
 {¶ 4} Appellant had two prior realtors, but in the Spring of 2002, he hired third-party defendant-appellee Zid Realty Associates. Owner Joseph Zidian acted as the main real estate agent. In April 2002, plaintiff-appellee Chris Carter negotiated with Mr. Zidian for the purchase of the house for $112,500 by way of land installment contract. [For purposes of clarity in this third-party case, the plaintiff will be referred to merely as Mr. Carter since the judgment in his favor has not been appealed.] The contract called for the well and septic systems to be inspected within twelve months of the final purchase date. The plaintiff paid $10,000 toward the purchase price and then made monthly installments of $752.11 from July 1, 2002 through July 1, 2003, after which he was to pay the balance on the contract.
 {¶ 5} At the end of the land contract term, the well and septic were inspected by the county. A report concerning the well was issued on August 7, 2003, which found problems with the well including unsafe water. Another report was issued on August 11, 2003, which found that the septic system does not meet present code, is undersized by today's standard, is malfunctioning and constitutes a nuisance. The report concluded that the septic system must be repaired or replaced in a manner that meets the present code within ninety days.
 {¶ 6} At this time, Mr. Carter learned about the September 2001 septic report. When he could not come to an agreement with appellant regarding who would pay for the repairs to the well and septic, Mr. Carter attempted to rescind the contract. However, appellant would not refund the $10,000 down payment.
 {¶ 7} On December 16, 2003, Mr. Carter filed a fraud and breach of contract complaint against appellant seeking rescission, compensatory damages, punitive damages, attorney fees and prejudgment interest. His fraud claim revolved around his contention that appellant and/or his agent fraudulently misrepresented or concealed the condition of the septic and the well systems.
 {¶ 8} Appellant answered, claiming in regard to the breach of contract claim that the well and septic inspections were not express conditions of the contract. As related to the fraud claim, appellant responded that the disclosures in the form were accurate because no "material problems" were evident from the September 2001 septic report since the county did not require repairs as a result of that inspection and since the system was expressly found to not be malfunctioning or a nuisance. Appellant also stated that he did not authorize Zid to make any verbal misrepresentations.
 {¶ 9} Appellant then filed a counterclaim alleging that Mr. Carter breached the contract and was not entitled to rescission. Appellant also filed a third-party complaint against Zid Realty alleging that if a jury found for Mr. Carter, then Zid was either solely or jointly and severally liable for any damages. He continued that he is entitled to indemnity or contribution from Zid. He asked for application of the doctrine primary-secondary liability. In an amended complaint, appellant added a claim for Zid's negligence in handling the real estate transaction.
 {¶ 10} The case was tried to a jury in March 2006. Evidence established that when applying for a county septic inspection, the property owner agrees to attach a copy of the septic report to the Residential Property Disclosure Form. And, evidence established that the Residential Property Disclosure Form states that it must be completed personally by the seller.
 {¶ 11} Mr. Carter testified that during negotiations, Mr. Zidian verbally expressed that the property had an approved well and septic inspection. (Tr. 80-81, 86). Mr. Zidian did not dispute this testimony. (Tr. 69). Mr. Carter then testified that the septic report was not attached to the Residential Property Disclosure Form, which was given to him by Mr. Zidian. On the other hand, Mr. Zidian testified that he received the September 2001 septic report from appellant's prior realtor and that he gave a copy of the report to Mr. Carter when he presented him with the Residential Property Disclosure Form. (Tr. 56).
 {¶ 12} After Mr. Carter presented his case, Zid sought a directed verdict claiming that the evidence at most established only negligence by Mr. Zidian, not fraud. (Tr. 165). Zid then cited a case from this court holding that in an "as is" contract, the buyer may not recover absent fraud. (Tr. 166-167).
 {¶ 13} On the record, the court stated that it sounded like a case of two alleged tortfeasors, only one of whom Mr. Carter chose to sue. The court opined that such theory does not evoke the doctrine of primary-secondary liability. In its judgment entry, the court concluded that appellant had the primary duty to attach the September 2001 Board of Health septic report to the Residential Property Disclosure Form and that the doctrine of primary-secondary liability did not apply. Thus, the court directed a verdict in favor of Zid.
 {¶ 14} Before submitting the case to the jury on Mr. Carter's complaint alone, the court dismissed Mr. Carter's breach of contract claim; the court held that the contract provision requiring well and septic inspections within twelve months were not conditions of the sale. As a result, only Mr. Carter's fraud claim against appellant proceeded to the jury.
 {¶ 15} The jury returned a verdict in favor of Mr. Carter for $10,000 in compensatory damages and $10,000 in punitive damages plus attorney fees. On March 15, 2006, the court released the aforementioned judgment entry stating the reasons for directing the verdict in favor of Zid. Appellant filed timely notice of appeal from that judgment. As appellee points out, the trial court advised that such order was not a final order on the verdict. Attorney fees and prejudgment interest issues were still pending and were resolved in a May 24, 2006 judgment entry, from which no appeal was taken. However, App. R. 4(C) provides:
 {¶ 16} "A notice of appeal filed after the announcement of a decision, order, or sentence but before entry of the judgment or order that begins the running of the appeal time period is treated as filed immediately after the entry."
 {¶ 17} As such, the premature notice of appeal is acceptable to vest this court with jurisdiction over appellant's claims. On appeal, appellant only takes issue with the court's grant of directed verdict for Zid. He does not contest any issues regarding Mr. Carter's verdict. Mr. Carter filed a brief to point out that his verdict was not contested and would not be affected by a reversal in appellant's favor.
 DIRECTED VERDICT {¶ 18} A motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence. Civ. R. 50(A)(1). The court shall sustain a motion for directed verdict if after construing the evidence most strongly in favor of the party against whom the motion is directed, the court finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party. Civ. R. 50(A)(4). "A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." Groob v. Keybank, 108 Ohio St.3d 348,2006-Ohio-1189, ¶ 14; Goodyear Tire Rubber Co. v. Aetna Cas. Sur.Co., 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 4. Thus, we apply a de novo standard of review. Id.
 THIRD-PARTY PRACTICE {¶ 19} Civ. R. 14 (A) provides in part:
 {¶ 20} "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. * * * If the third-party defendant is an employee, agent, or servant of the third-party plaintiff, the court shall order a separate trial upon the motion of any plaintiff. * * * "
 {¶ 21} This rule provides for the third-party practice of impleader. Some of the purposes of Civ. R. 14 include: to promote judicial efficiency by avoiding a circuity of actions; to consolidate separate actions that should be tried together; to avoid duplicative evidence and testimony; and to prevent conflicting verdicts on identical or similar evidence or testimony. State ex rel. Jacobs v. Municipal Ct. of FranklinCty. (1972), 30 Ohio St.2d 239, 241.
 {¶ 22} "The transaction or occurrence which forms the subject matter of the primary claim must be the same transaction or occurrence that gives rise to legal rights of the defendant against the third-party defendant." Id. at 242. Thus, the claim asserted in the third-party complaint must arise because of the primary claim or be in some way derivative of it. Id.
 {¶ 23} As can be seen above in the last sentence we quoted from Civ. R. 14, impleader may be used by a principal to assert an indemnification claim against an agent when the principal claims he is being sued due to acts of the agent committed against the plaintiff. Additionally, ever since Ohio enacted statutes regarding joint tortfeasors, Civ. R. 14 may be used by one tortfeasor to enforce the right of contribution from a joint or concurrent tortfeasor. See Eberly v. A.P. Controls, Inc.
(1991), 61 Ohio St.2d 27, 35; Costin v. Wick (Jan. 24, 1996), 9th Dist. No. 95CA006133 (a claim for contribution may be brought by third-party practice).
 {¶ 24} The doctrines of indemnity and contribution are distinct. See, e.g., Motorists Mut. Ins. Co. v. Huron Rd. Hosp. (1995),73 Ohio St.3d 391, 394. Contribution is based upon statute and can be used when two defendants contribute to a single indivisible injury. R.C. 2307.22. However, indemnification is a common law doctrine based upon primary and secondary liability. Motorists Mut., 73 Ohio St.3d at 394. Under the doctrine of indemnification, the principal, from whom the plaintiff seeks to recover, is only secondarily or passively liable and able to seek reimbursement from the agent who is primarily or actively liable. See Krasny-Kaplan Corp. v. Flo-Tork, Inc. (1993), 66 Ohio St.3d 75, 78. More specifically:
 {¶ 25} "Indemnification is a right which arises only within the context of a relationship wherein one party is found to be vicariously liable for the acts of a tortfeasor. Vicarious liability can be found only when the parties possess a special relationship that gives rise to vicarious liability as a matter of law. * * * Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant. * * * Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence." Reynolds v. Physicians Ins. Co. of Ohio (1993),68 Ohio St.3d 14, 16.
 {¶ 26} Although the doctrines are distinct, a case can involve various acts each of which call into question a different doctrine for purposes of liability and recoupment. Moreover, besides using Civ. R. 14 to bring in an agent who commits the tort against the plaintiff for full indemnification or contribution or to bring in a joint tortfeasor for contribution, various courts around the nation have allowed defendant-principals to use impleader to bring in agents who negligently perform duties for their principals. See, e.g., Magnet Bank F.S.B. v.Barnette (1992), W.Va. Sup. Ct. No. 20406 (finding sufficient factual nexus when evaluating application of a rule that mirrors the relevant language in the federal impleader rule as Ohio rule does); Mays FamilyCtrs., Inc. v. Goodman's, Inc. (N.D. Ill. 1985), 109 F.D.R. 112 (considerable overlap in facts necessary to establish both cases);Taylor v. GI Export (E.D.N.Y. 1978), 78 F.D.R. 494. Thus, if a defendant claims that he committed the alleged tort causing the plaintiff's loss only because of the advice or omission of his attorney or accountant, the defendant can file a third-party complaint against his attorney or accountant for breach of duty. Id.
 ASSIGNMENTS OF ERROR {¶ 27} Appellant sets forth the following two assignments of error:
 {¶ 28} "IN GRANTING A DIRECTED VERDICT TO THE THIRD-PARTY DEFENDANT, THE TRIAL COURT ERRED IN FINDING THAT THERE WAS INSUFFICIENT EVIDENCE IN SUPPORT OF THE THIRD-PARTY PLAINTIFF'S INDEMNITY CLAIM AGAINST THE THIRD-PARTY DEFENDANT."
 {¶ 29} "IN GRANTING A DIRECTED VERDICT TO THE THIRD-PARTY DEFENDANT, THE TRIAL COURT ERRED IN ITS MISINTERPRETATION OF THE INTENT AND PURPOSE OF THIRD-PARTY PRACTICE UNDER RULE 14 OF THE OHIO RULES OF CIVIL PROCEDURE."
 {¶ 30} Appellant urges that his third-party suit against Zid was appropriate, noting that his complaint set forth indemnity, contribution, primary-secondary liability, joint and several liability and negligence in performing duties as a realtor. He notes that Mr. Carter's complaint made allegations against both him and his agent without directly suing the agent. Appellant points out that two of Mr. Carter's main claims involved only Mr. Zidian: (1) Mr. Carter and Mr. Zidian both testified that Mr. Zidian verbally expressed that the well and septic systems passed inspection; and (2) Mr. Zidian claimed to have provided the September 2001 septic report to Mr. Carter, but Mr. Carter claimed that Mr. Zidian did not do so.
 {¶ 31} Appellant contends that although he could not delegate the duty to fill out the disclosure form to his realtor, he could delegate the duty to attach the septic report to the disclosure form. He alleges that if the septic report was attached, then the disclosure form would have been supplemented. He urges that the statements in the September 2001 report did not reveal "material problems" and that had Mr. Zidian attached the form as he claimed he did, then the jury would not have found fraud. Appellant continues that if the agent fails to follow through with a delegated duty and a tort is found to be committed by the principal, then he is only secondarily liable and the agent is primarily liable. He proceeds to outline the doctrines of agency, indemnity and impleader. He also makes arguments involving Mr. Zidian's negligence toward him and breach of fiduciary duty.
 {¶ 32} Appellee Zid states that it could only be held liable to Mr. Carter for fraud and that there was no evidence that Mr. Zidian acted fraudulently. Thus, appellee Zid concludes that it could not be liable to appellant either. Then, appellee claims that the duty to attach the septic report is non-delegable. Appellee alternatively contends that there is no evidence that appellant delegated any duties to Mr. Zidian, making much of the fact that appellant did not testify. Appellee concludes that appellant was held liable for his own fraudulent conduct, not any conduct of Mr. Zidian. Finally, appellee also posits that appellant's arguments on breach of professional standard of care are raised for the first time on appeal and complains that there was no testimony showing the standard of care or breach of that standard.
 ANALYSIS {¶ 33} We shall start with the issue of Zid's alleged negligence in its duty to its client, appellant. Contrary to appellee's contention, professional negligence was not raised for the first time on appeal. Appellant's amended third-party complaint added a claim for negligence against Zid. Specifically, appellant's amended complaint stated that Zid was negligent in handling the real estate transaction at issue. This is sufficient notice of a professional negligence action under Ohio's liberal notice pleading rules. Civ. R. 8(A) (short and plain statement of the claim showing the party is entitled to relief).
 {¶ 34} This allegation could then be established through evidence of failing to perform delegated duties. It could also be established through evidence of a failure to perform various statutory duties. See, e.g., R.C. 4735.61 (realtor shall not give false information in a real estate transaction); R.C. 4735.62(A) (realtor has duty to exercise reasonable skill and care and shall be fiduciary); R.C. 4735.67(A) (realtor shall disclose to the purchaser all material facts of which he has actual knowledge and shall not recklessly disregard the truth).
 {¶ 35} As for appellee's further allegations that appellant waived the professional negligence claim by failing to mention or prove it at trial, it is notable that the directed verdict was granted after theplaintiff's case was presented, not after the appellant-third-party plaintiff's case. This is unusual in cases such as this where the motion was allegedly based upon the third-party plaintiff's lack of proof, not the original plaintiff's proof. This unusual procedure precluded appellant from presenting trial evidence of negligence and evidence concerning all his other claims. Thus, waiver is not apparent.
 {¶ 36} Moreover, contrary to appellee's argument, there was sufficient evidence of a breach of the standard of care to avoid a directed verdict. If the lack of care is within the comprehension of a layperson, then no special or expert testimony is required. Ramage v. Central OhioEmp. Serv., Inc. (1992), 64 Ohio St.3d 97, 102, citing Evid. R. 702 and 703. A layperson could find breach of the standard of care here by way of evidence that a realtor failed to perform a duty delegated to him by his client for instance.
 {¶ 37} This leads to a review of the trial court's finding on the record and appellee's matching claim that there was no evidence that a duty was in fact delegated. However, after viewing all the evidence in the light most favorable to appellant, a reasonable person could find by inference, circumstantial evidence and admission that the realtor accepted the delegated duty to attach the septic report to the disclosure form. By revealing that he received the septic report from appellant's prior agent and by claiming that he did in fact supply the form to Mr. Carter along with the disclosure form, Mr. Zidian essentially admitted that he accepted a duty to attach the report for appellant.
 {¶ 38} The next question thus becomes whether the duty could be delegated. The trial court found that appellant had the primary duty to attach the form. Appellant takes this to mean that the court held that he is not permitted to delegate the duty and thus all sellers are required to personally attach septic reports to the disclosure form. Appellee gives the court's statement this same interpretation.
 {¶ 39} Essentially, appellant agrees that he is liable to Mr. Carter if the report was not attached, but states that if the lack of disclosure is due in whole or in part to Mr. Zidian's acts or omissions, then he can recoup all or part of his losses from Zid. Appellant asks us to distinguish between the personal acts required in filling out the disclosure form and the act of attachment of the septic report required only by a statement in the county's application for inspection. He concedes that he could not have asked his agent to fill out the disclosure form required by R.C. 5302.30 for him but urges that he can rely on his agent to supply the septic report to the buyer.
 {¶ 40} For purposes of the comparison he asks us to make, we note the relevant language of the two documents. The statutory Residential Property Disclosure Form states, "The representations contained on this form are made by the owner and are not the representations of the owner's agent or subagent." In the instructions to the owner, the form also states, "Complete this form yourself." This form is based upon R.C. 5302.30.
 {¶ 41} On the other hand, the application for the septic inspection stated, "I, the undersigned, agree to attach a copy of the completed sewage evaluation to the Residential Property Disclosure form provided to the buyer of the property." Strangely, the later generated septic report does not reiterate a need to attach it to the disclosure form. And, the statutory disclosure form, with its requirements that the seller complete the form himself, does not mention a need to attach the evaluation. (In fact, the later version of the form, generated under a new provision in the statute effective January 2006, states that the septic evaluation is available at the local board of health). As pointed out by appellee, the requirement in the application is based upon a Board of Health regulation, not statute. Thus, one could not use the wording of the Residential Property Disclosure Form to impose some absolutely non-delegable duty on the seller regarding the separately generated and separately governed septic report.
 {¶ 42} Compared to the wording of the disclosure form, the wording of the application for inspection does not imply an intent to make the physical duty to attach or provide the septic report to the buyer one that cannot be delegated to an agent. Rather, it merely places affirmative liability on the seller to the buyer. However, the duty to attach the form remains delegable for purposes of determining whether an agent is liable to his principal. See, generally, McCabe/Marra Co. v.Dover (1995), 100 Ohio App.3d 139, 159 (where the Eighth District found error in the rejection of a third-party claim and found that a statute requiring the owner to submit building plans does not prohibit submission by an agent).
 {¶ 43} In fact, notwithstanding the parties' interpretation of the language in the stricter disclosure form, technically even it could be completed by someone at the principal's direction with the principal providing the answers (for instance, if the seller had no hands, broken hands or was too weak to write). We are hard-pressed to think of a duty that is non-delegable for purposes of recoupment from the delegee.
 {¶ 44} The non-delegable duty doctrine typically refers to a principal who is prohibited from avoiding secondary liability to the plaintiff for the acts of the principal's independent contractor. Pusey v. Bator
(2002), 94 Ohio St.3d 275, 279. This case cited by appellee should have clarified this doctrine for him and revealed that it was inapplicable herein. There, the Supreme Court stated that where there is a nondelegable duty, the employer can delegate the work but not theduty. Id. Thus, the employer is liable even though he typically would not be in the case of an independent contractor's tort. Id. This has nothing to do with the employer's ability to recover from his independent contractor due to the employer's liability to a plaintiff, i.e. it does not preclude secondary liability between a principal and agent because of negligence or fraud of the agent. See id.
 {¶ 45} Here, appellant agrees that he is liable to Mr. Carter (if Mr. Carter's claim that he received no septic report is believed), but appellant wishes to recover from the agent for the agent's negligence in performing the duties that were delegated to him. Merely because appellant is liable to Mr. Carter for failing in his duty to attach a septic report, does not preclude appellant from suing his realtor for failing to perform that duty as delegated.
 {¶ 46} We next note appellee's claim that Mr. Zidian did not commit fraud but only negligence. Zid argued in its direct verdict motion that its actions were only negligent, not fraudulent, and that the buyer cannot recover from the seller or his agent absent fraud in the case of an "as is" contract. Firstly, whether Mr. Zidian's actions were fraudulent or negligent is a jury question since intent behind omissions or representations can reasonably be inferred either way. Secondly, such rule does not relieve the agent from liability to his client for failing to perform the duties which he essentially admits were delegated to him. Thus, although this argument may be pertinent to arguing against liability to Mr. Carter directly or for contribution as a joint tortfeasor, it does not preclude a client from recovering for negligence by their real estate agent in handling the transaction.
 {¶ 47} Nor does it preclude the seller from arguing that the agent's negligent actions made the fraud case against him. Appellant argued that merely because the inspector disclosed that the septic system was undersized under today's code and thus not satisfactory for the property, does not mean there were "material problems" with the system. Pre-existing septic systems are grandfathered in. The report found that his system functioned properly. The report stated that his system was not a nuisance, and no repairs or further actions were ordered. From this, appellant contends to have reasonably believed there was no material problem that had to be disclosed in the disclosure form. And, since his system was grandfathered in, he believed there are no code "violations currently affecting the use of the property."
 {¶ 48} Had the septic report been provided to the buyer along with the disclosure form, as the realtor in fact intended to do, a jury may have agreed that appellant's actions were not fraudulent. However, without the attachment of the report, his disclosures tend to look more fraudulent. Had his agent attached the septic report as the agent intended and claimed to have done, then the buyer could have evaluated the contents for himself which would have supplemented the answers on the disclosure form and possibly erased any implications of fraudulent concealment. Hence, although a realtor may only be liable to thebuyer for fraud in an "as is" contract, the realtor can be liable to his own principal for negligence if completion of a duty could have avoided the principal's liability for fraud.
 {¶ 49} Moreover, Mr. Carter's claim was also based upon Mr. Zidian's statements that the well and septic had approved inspections. In truth, however, the well had not been inspected. Appellee responds there was no trial claim concerning the well because when the court asked Mr. Carter's counsel before trial what his fraud claim was, he only mentioned the failure to disclose the condition of the septic system. (Tr. 7). However, Mr. Carter's complaint specifically took issue with the agent's representation regarding the well, and testimony was presented on the issue at trial.
 {¶ 50} Appellee believes that appellant is conceding his own personal fraud by failing to contest Mr. Carter's verdict. Yet, this argument appears to miss the whole point of the argument regarding what effect the missing septic report would have had on the inferences surrounding appellant's intent and the allegedly extra disclosures it would have supplied. Appellant is saying that his agent's acts or omissions caused or contributed to the jury verdict. And, contrary to appellee's assertion, it does not clearly appear that the jury verdict was based solely on appellant's conduct. Rather, it seems that appellant may very well have been held liable at least in part due to the conduct of appellee. In fact, Mr. Carter's trial theory of appellant's liability proceeded at least in part on the doctrine of agency.
 {¶ 51} We also note that the trial court made statements on the record implying that appellant could not bring Zid into the action for fraud because Mr. Carter did not choose to sue him. (Tr. 172). However, this is contrary to the principles of joint and several liability under Ohio's current contribution statutes. As aforestated, joint or concurrent tortfeasors who each allegedly contributed to a single indivisible injury can be impleaded into the action by a defendant.
 {¶ 52} We next address appellee's contention that when asked by the trial court what Zid did wrong, appellant responded at one point, "nothing." However, it must be remembered that appellant's main theory was an absolute defense against Mr. Carter's claim. That defense was that no one did anything wrong, that the disclosure form was properly completed, that the septic report was in fact attached and that the oral representation concerning the septic was true. It was only in case the jury disagreed with this defense that appellant was arguing in the alternative that the problems were the result of appellee's acts and/or omissions. Appellee was aware of this tactic.
 {¶ 53} Finally, the trial court found that whether the septic report put appellant on notice of material problems was a jury question, and this decision was not contested. Notwithstanding the jury issue as to whether appellant's system had a material problem, appellant failed to fill in the date of the last inspection as specifically asked in the form. Although the report would have also provided this date, there is no good reason why he did not fill it in.
 {¶ 54} For these reasons, we could not follow appellant's demand to merely enter judgment in his favor against appellee for all of Mr. Carter's damages (and to remand so he could establish additional damages above those awarded to Mr. Carter). Contrary to his argument, there is no indication that the jury found that appellee's omissions or representations were the sole proximate cause of all damages. There appear to be many jury questions as to the extent to which each party was liable. Viewing the evidence in the light most favorable to appellant, reasonable minds could find sufficient evidence to establish some or all of appellant's claims. As such, it should be left up to a jury whether appellee is liable to appellant for all or part of the Mr. Carter's claim.
 {¶ 55} Civ. R. 14(A) allows a third-party complaint against a party whom the defendant claims may be liable to him for all or part of Mr. Carter's claim. Appellant's claims arose from and are derivative to the successful prosecution of Mr. Carter's claim. That is, there would be no injury to sue Zid upon if Mr. Carter was not successful. Thus, a third-party action was proper. Moreover, Civ. R. 18(A) provides that a party asserting a claim to relief as a third-party claim may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party. In this case, appellant was deprived of the opportunity to use impleader to have a jury determine whether appellee is liable to him on various alternate claims, grounds and theories.
 {¶ 56} Each of the acts or omissions claimed by Mr. Carter has its own theory of liability, the allocation of which should separately be determined by a jury. Contrary to appellant's contention, res judicata does not apply to make Zid automatically wholly liable for all damages awarded against appellant. The jury never had the chance to determine Zid's liability, the basis therefore and the amount of damages attributable to Zid. That is, a jury need not necessarily find that appellee Zid's omissions were the complete reason for the fraud verdict against appellant or for the finding of punitive damages. For all of the foregoing, the entry of directed verdict is reversed, and this case is remanded for trial.
 {¶ 57} The only remaining issue deals with which parties the remanded trial will involve. Appellant Bernard does not appeal or contest Mr. Carter's verdict or his compensatory and punitive damage awards. Appellee Zid seems to assume that Mr. Carter's verdict will be erased by our reversal of Zid's directed verdict. However, App. R. 3(C)(1) provides:
 {¶ 58} "Cross appeal required. A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App. R. 4."
 {¶ 59} Appellee Zid did not file a cross-appeal even though he now seeks to change the final judgment as to Mr. Carter upon our reversal of the directed verdict. Thus, Zid failed to assert his rights against Mr. Carter's verdict as required to overturn such verdict. That is, without an appeal regarding the judgment in favor of the plaintiff, the plaintiff's judgment could not be reversed. As such, the judgment for Mr. Carter must stand. In accordance, the remanded case shall proceed only between appellant Bernard and appellee Zid.[1]
 {¶ 60} For the foregoing reasons, the directed verdict is reversed and this case is remanded for trial between appellant and appellee Zid.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.
[1] Regarding appellee's notions of fairness on the scope of the remanded trial, we note that the professional negligence action was not required to be litigated in response to Mr. Carter's suit but could have been originally litigated as a separate suit between appellant Bernard and appellee Zid. Moreover, Civ. R. 14(A) specifically allows separate trials to be held on third-party claims.