{¶ 1} Plaintiff-appellant, Rassoul J. Cooper ("Cooper"), appeals from a decision of the trial court that granted defendants-appellees, First Energy Corporation's ("First Energy") and the Cleveland Electric Illuminating Company's ("CEI") motions for summary judgment. Upon review, we conclude that there are no genuine issues of material fact with regard to Cooper's claim for negligence against CEI and First Energy and that the trial court properly granted summary judgment to them. Accordingly, we affirm the trial court's decision.
 {¶ 2} A review of the record reveals the following facts: HydroChem Industrial Services, Inc. ("HydroChem") is an Ohio business that provides industrial cleaning services for power generating plants. One of its customers is First Energy. CEI is a subsidiary of First Energy. HydroChem has a contract with First Energy to provide and perform cleaning services for CEI at its Eastlake and Lakeshore plants.
 {¶ 3} Cooper was employed as a crew leader for HydroChem and was stationed at the Eastlake plant. His principal duties were to vacuum fly ash[1] from large silos that resulted from coal being burned at the Eastlake plant. Before each silo can be vacuumed, the silos must be de-energized. This is an important safety precaution because it helps to prevent injury from moving parts inside the silo while it is being cleaned or serviced. At the Eastlake plant, a lockout/tag-out procedure is in place that requires the control room operator employed by CEI to complete a form, *Page 4 
known as a 465, that verifies that the various components of the silo have been de-energized. The cleaning equipment cannot be operated until the supervisor or team leader of HydroChem signs off on the 465 form.
 {¶ 4} On June 26, 2003, Cooper arrived at the Eastlake plant for work. Upon his arrival, he was informed that he was needed at the Lakeshore plant because they were understaffed. Cooper arrived at the Lakeshore plant at approximately 11:00 a.m. He met with Bill Estright ("Estright"), the supervisor of the HydroChem crew at the Lakeshore plant, and was told to vacuum the bin filter/hopper from the roof of the silo. Estright informed Cooper that he had told the CEI employees to de-energize the silo and that the lockout/tag-out procedure had been performed. Unlike the Eastlake plant, the Lakeshore plant did not utilize a 465 form when de-energizing the silo. Rather, the custom at the Lakeshore plant was that Estright would tell the CEI employee to shut off the machine that was to be serviced.
 {¶ 5} The bin filters/hoppers at the Eastlake plant differed from the ones at the Lakeshore plant in one important way: the throat of the Lakeshore bin filter was equipped with a paddle wheel. The paddle wheel was never de-energized, even when the lockout/tag-out procedure was performed. Estright knew that the paddle wheel was not turned off. However, Cooper did not know this and was not informed by Estright that there would be a moving part inside the bin filter. *Page 5 
 {¶ 6} Cooper began to vacuum the bin filter. Cooper guided the end of his hose into the hopper with the fingertips of his left hand and two of his fingertips were severed by a moving paddle wheel inside the hopper.
 {¶ 7} On June 23, 2005, Cooper filed this complaint for personal injury against First Energy and CEI.[2] On February 21, 2006, both CEI and First Energy filed motions for summary judgment asserting that they owed no duty of care to Cooper because he was an independent contractor who was employed to do an inherently dangerous job. First Energy also claims that it cannot be liable for Cooper's injuries because it is merely a holding company and the parent corporation of CEI.
 {¶ 8} On April 21 and 24, 2006, the trial court granted both CEI's and First Energy's motions for summary judgment without opinion. It is from this decision that Cooper now appeals and raises one assignment of error for our review.
 {¶ 9} "I. The trial court erred in granting summary judgment to the appellees where genuine issues of material fact exist and the appellees are not entitled to judgment as a matter of law.
 {¶ 10} In this assignment of error, Cooper claims that the trial court erred in granting summary judgment in favor of CEI and First Energy because genuine issues of material fact exist with regard to his negligence claim. *Page 6 
 {¶ 11} We begin by noting that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378; citing Dupler v. Mansfield Journal (1980),64 Ohio St.2d 116, 119-120.
 {¶ 12} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 13} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). *Page 7 
Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 14} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment for CEI's and First Energy was appropriate.
 {¶ 15} Cooper argues that the trial court erred in granting CEI's and First Energy's motions for summary judgment because a genuine issue of material fact exists as to whether they owed him a duty of care even though he was an independent contractor.[3]
 {¶ 16} As a general rule, an owner of premises has no legal duty, and therefore cannot be liable in negligence, to the employees of an independent contractor working on the premises. Pusey v. Bator,94 Ohio St.3d 275, 279, 2002-Ohio-795. Exceptions to this rule exist, however, where the owner actively participates in the project or has exclusive control over a critical variable in the work environment. Sopkovich v.Ohio Edison Co., 81 Ohio St.3d 628, 642-643, 1998-Ohio-341. Actual participation includes "retaining sole control over the safety features necessary to eliminate the hazard." See Hirschbach v. Cincinnati Gas Electric (1983), 6 Ohio St.3d 206, 208.
 {¶ 17} We find the preceding authority applicable to this case. Here, CEI/First Energy did not retain and exercise exclusive control over a critical aspect of Cooper's *Page 8 
work. CEI did not supervise or control the manner in which Cooper or any of HydroChem's employees performed their tasks. Although CEI was responsible for shutting down and de-energizing the silo, it was HydroChem's responsibility to inform CEI when a particular silo needed to be deactivated or when certain parts of the silo needed to be de-energized. At the Lakeshore plant, HydroChem did not require that the paddle wheel be turned off when the silos were being serviced. Estright knew this but failed to inform Cooper that there would be a moving part inside the bin.
 {¶ 18} Construing the evidence most strongly in favor of Cooper, as we are required to do, we find that the granting of summary judgment in favor of CEI and First Energy was proper. The evidence is undisputed that HydroChem was totally in control of informing CEI which parts of the silo needed to be shut down. HydroChem did not require that the paddle wheel be shut down during maintenance. CEI deactivated all parts of the silo that it was asked to de-activate. As a result, the record does not establish that CEI/First Energy owed Cooper, an independent contractor, a duty of care. Since Cooper cannot establish the first essential element to prove negligence, namely that he was owed a duty of care, the trial court did not err in granting summary judgment in favor of CEI and First Energy. See Tipton v. Bernie `s Electric Sales Service, Inc., Williams App. No. WM-03-021, 2004-Ohio-5249 (no liability for owner of property where the independent contractor was totally in control of de-energizing the power lines to the dredge and simply chose to by-pass the safety procedures). *Page 9 
 {¶ 19} Cooper's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and KENNETH A. ROCCO, J., CONCUR
[1] Fly ash is a by-product of burning coal.
[2] Cooper's original complaint was filed on June 22, 2004. He filed a notice of voluntary dismissal on December 30, 2004.
[3] There is no dispute that Cooper was an employee of HydroChem, an independent contractor hired to work at the CEI facilities. *Page 1